SUPERMARKETS GENERAL CORPORATION *vs.* COMMISSIONER OF
REVENUE.

Suffolk. May 5, 1988. — June 22, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Appellate Tax Board: findings, appeal to Supreme Judicial Court;
Waiver; Corporation; Corporate excise; Abatement. *Waiver. Limitations,
Statute of. Statute,* Construction. *Words,* "Actual assessment," "Deemed
assessment."

A corporate taxpayer did not waive its right to appeal from a decision of the
Appellate Tax Board by reason of its failure to request findings and a
report of the board's decision under G. L. c. 58A, § 13, where the
question to be determined on appeal was whether, on the simple and
undisputed factual data properly before this court, the taxpayer's appli-
cations for abatement of corporate excise taxes were or were not timely
filed as matter of law. [681-682]

Where a corporate taxpayer filed its 1982 State excise tax return and paid its
tax due on June 14, 1983; filed a report of change with respect to Federal
net income on September 5, 1984, reporting to the Commissioner of
Revenue an increase in its Federal net income and, therefore, a corres-
ponding increase in net income attributable to Massachusetts, the proper
amount of additional State excise tax being paid at the time it filed its
report; and filed an application for abatement of its State excise tax on
June 9, 1986, on the ground that it was entitled to certain unclaimed
deductions, it was held that in accordance with G. L. c. 62C, §§ 26
and 37, an actual assessment of additional tax against the taxpayer
occurred when it filed its report of change in Federal income and paid
the additional tax due, and the Commissioner took no further action,
and that, accordingly, the taxpayer made a timely filing of its application
within two years from the date the tax was assessed under G. L. c. 62C,
§ 37. [682-685]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Barbara A. Lenk* for the taxpayer.

*Alice E. Moore*, Assistant Attorney General (*Suzanne E. Durrell*, Assistant Attorney General, with her) for the Commissioner of Revenue.

LYNCH, J. This appeal raises issues and arises from facts similar to those considered in *Electronics Corp. of Am.* v. *Commissioner of Revenue, ante* 672 (1988), also decided today. However, in this case we are presented squarely with a question left open in *Electronics Corp. of Am.*, that is, whether the abatement application of the taxpayer, Supermarkets General Corporation,[1] was timely filed "within two years from the date the tax was assessed or deemed to be assessed" under G. L. c. 62C, § 37 (1986 ed.). A preliminary procedural question is presented as to whether the taxpayer waived its right of appeal by not requesting findings and report of the decision of the Appellate Tax Board (board) below.

The procedural history is as follows. On June 9, 1986, the taxpayer filed with the Commissioner of Revenue (commissioner) an application for abatement of its corporation excise for 1982, on the ground that it was entitled to certain unclaimed deductions which the commissioner refers to as the "UJIB deductions."[2] The commissioner denied the application on the ground that it was not timely filed under G. L. c. 62C, §§ 30 and 37 (1986 ed.). The taxpayer appealed to the board under G. L. c. 58A, § 7 (1986 ed.). The commissioner filed a plea in bar with the board, arguing that the board lacked jurisdiction because (1) the abatement application was not filed within the time periods set out in G. L. c. 62C, § 37, and (2) G. L. c. 62C, § 30, did not authorize the taxpayer's appeal since the claimed deductions were not related to the Federal change in income. The board allowed the commissioner's plea, and the taxpayer appealed. We took the case here on our own initiative.

---

[1] The successor in interest to Purity Supreme, Inc., originally the taxpayer in this case.

[2] Under G. L. c. 63, § 38F, corporations may deduct amounts for compensation paid to individuals domiciled in an eligible area of substantial proverty. To be eligible for these deductions, the corporation must have a certificate of eligibility from the Federal Urban Jobs Incentive Bureau (UJIB). Thus, we refer to such deductions as the UJIB deductions.

The relevant facts are simple and undisputed.[3] On June 14, 1983, the taxpayer filed its 1982 corporation excise return and paid therewith taxes in the amount of $184,138 and interest in the amount of $15,014. It had made estimated payments earlier in the year and subsequently, when it had filed for an extension of time. The taxpayer did not claim UJIB deductions at any of these times.

On June 5, 1984, the taxpayer received from the Internal Revenue Service a notice of Federal change in income. On September 5, 1984, the taxpayer filed with the commissioner a Form 355FC Report of Change with Respect to Federal Net Income (Form 355FC), reporting to the commissioner an increase in its Federal net income, and therefore, a corresponding increase in net income attributable to Massachusetts. The taxpayer paid the additional excise due as a result of this change at the time it filed its report. On June 9, 1986, the taxpayer filed with the commissioner its application for abatement claiming the UJIB deductions for the 1982 tax year.[4]

1. *Findings and report under G. L. c. 58A, § 13.* The commissioner argues that the taxpayer has waived its right to appeal because it failed to request findings and a report of the board's decision under G. L. c. 58A, § 13. We reject this argument.

Under G. L. c. 58A, § 13, "the board shall make . . . findings and report [on its decision] if so requested by either party within ten days of a decision without findings of fact. . . . If no party requests such findings and report, all parties shall be deemed[ ] to have waived all rights of appeal to the appeals court upon questions as to the admission or exclusion of evidence, or as to whether a finding was warranted by the evidence." By their terms, the section's prohibitions do not extend

---

[3] The commissioner's plea in bar did not contest the facts asserted in the taxpayer's petition to the board. Therefore, we take the facts set forth in the petition as true. *Leonardi* v. *State Tax Comm'n*, 355 Mass. 454, 455 (1969). *Kalmus* v. *Kalmus*, 330 Mass. 41, 42 (1953).

[4] The taxpayer simultaneously filed an amended return reflecting the UJIB deductions and requesting a refund.

to pure questions of law which, if not otherwise waived, may be raised on appeal without a request for findings and report.

Here, we are merely asked to determine whether an abatement application was timely filed under G. L. c. 62C, § 37, within two years from the date taxes were assessed or deemed to be assessed. The only fact questions relevant to such an inquiry are the date when taxes were assessed and the date when the application was filed. As will be demonstrated below, such questions are readily answered by reference to undisputed facts in the record before us. Ascertainment of the correct statutory provision from which to draw the limitation period and of the appropriate date from which to measure the running of the limitation period involves legal, rather than factual, determinations. Therefore, we reject the commissioner's claim that the taxpayer's failure to request findings and report constitutes a waiver of its right to appeal the question of law presented here.[5]

2. *Timeliness under G. L. c. 62C, § 37.* The taxpayer filed its abatement application within two years from the date that tax was assessed or deemed to be assessed. Under G. L. c. 62C, § 26, as inserted by St. 1976, c. 415, § 22, "[t]axes shall be

---

[5] The cases cited by the Commissioner are inapposite. In *Vespa* v. *State Tax Comm'n*, 373 Mass. 857 (1977), a failure to request findings and report constituted a waiver of the right to appeal where the issue was the taxpayer's domicil. Domicil, as is well recognized, is "mainly a question of *fact* to be determined from all the evidence" (emphasis added). *Lane* v. *Commissioner of Corps. & Taxation*, 358 Mass. 803, 804 (1970), quoting *Commonwealth* v. *Davis*, 284 Mass. 41, 49 (1933). In *Assessors of Norwood* v. *Barton*, 384 Mass. 699, 700 (1981), and in *Stearns* v. *Assessors of Worcester*, 376 Mass. 930 (1978), the records were so inadequate that this court was unable to determine whether any issue of law had been raised on appeal. Finally, in *Beardsley* v. *Assessors of Foxborough*, 369 Mass. 855 (1976), we noted that "the question whether the evidence warranted a particular finding or a particular ruling of law should be raised by a request filed with the board, and failure to file such a request for a ruling will justify an affirmation of the decision of the board because nothing will be properly before us for review." *Id.* at 856-857 n.3. Here, the simple factual data necessary are properly before us, and the question to be determined is not whether some finding or ruling was warranted by the evidence, but only whether, on the facts which are before us, the abatement applications were or were not timely as a matter of law.

deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter and on any amendment, correction or supplement thereof, or at the amount properly due, whichever is less, and at the time when the return is filed or required to be filed, whichever occurs later."

However, while § 26 defines the time period when a tax is "*deemed* to be assessed" (emphasis added), the running of the § 37 limitation period starts from "the date the tax was assessed *or* deemed to be assessed . . . whichever is later" (emphasis added). Thus, § 37 clearly contemplates that the dates of actual assessment and deemed assessment need not be identical, and that a taxpayer may benefit from whatever is the later date.

Such a reading of § 37 is borne out in the commissioner's own regulations. For example, under 830 Code Mass. Regs. § 62C.37.1(3) (1988), "[i]f more than three years have expired from the due date of the return and an application for abatement is filed within two years of an assessment the Commissioner will grant an abatement only to the extent that it relates to that assessment." The regulation goes on to discuss "additional assessment[s]," and states that, with respect to such additional amounts, a taxpayer "should not file an application for abatement *until* and unless the [additional] tax is *actually assessed* by the Commissioner" (emphasis added). Thus, there is a recognized divergence between the terms "deemed assessment" and "actual assessment." To the extent that this points up an ambiguity in § 37, that ambiguity is to be construed against the taxing authority.[6] *McCarthy* v. *Commissioner of Revenue,*

---

[6] The statute is ambiguous. Even if it were to be accepted that the limitation periods on the abatement remedy run from "the time when the return is filed or required to be filed, whichever occurs later" (G. L. c. 62C, § 26 [*a*]), we are still left with the question of what is meant by the word "return." The term is nowhere defined in the statute. It may be that the word "return" means "initial return" or "original return," but no such qualifiers appear in the language of the statute. Indeed, the commissioner's own regulations refer to "amended returns." See, e.g., 830 Code Mass. Regs. § 62C.37.1(4)(b) (1988). It reasonably could be argued that the general term "return" encompasses both the specifics, "original return" and "amended return." It would not be unreasonable to construe that term as also including forms performing the function of a return — such as the

391 Mass. 630, 632-633 (1984), and cases cited. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 530 (1921), *S.C.,* 241 Mass. 309 (1922).

In the circumstances of this case, it safely may be said that such an actual assessment of additional tax against the taxpayer occurred when it filed its report of change in Federal income and paid the additional tax due, and the commissioner took no further action.[7] The commissioner himself, in his plea in bar, in fact refers to the September 5, 1984, payment as an "additional *assessment*" (emphasis added). The assessment was made on September 5, 1984. The taxpayer's application was filed on June 9, 1986, less than two years later. Therefore, the taxpayer timely filed its application within two years from the date the tax was assessed.

The commissioner argues, however, that the two-year limitation period of § 37 is simply inapplicable, because the application "requests an abatement for unclaimed deductions, and not an abatement arising out of actual tax assessments or deemed tax assessments." The commissioner cites no case or other authority to support this somewhat cryptic argument. On its face, § 37 itself makes no such distinction between taxpayers aggrieved by an assessment alleged to be too high because of unclaimed deductions and taxpayers aggrieved by an assessment for some other reason. The argument lacks merit.

The commissioner also contends that, since the taxpayer's application was based on unclaimed deductions, "the assessment date for [the taxpayer] for taxes which could have been subject to UJIB deductions would have been the same date by

report of change in Federal income at issue here — regardless of the label placed on such forms by the commissioner. The Legislature has given no indication as to what is the proper interpretation. We construe the statute in favor of the taxpayer and conclude that the abatement applications here were filed within two years of an assessment under § 37. See text, *infra.*

[7] Under G. L. c. 62C, § 26 (*a*), taxes are "deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter *and on any amendment, correction, or supplement thereof* . . . ." Therefore, the additional amount paid by the taxpayer without objection or correction by the commissioner (see G. L. c. 62C, § 30), was an "assessment."

which [the taxpayer] was required to claim the deduction and that is September 25, 1982," the last day of the taxpayer's fiscal year. This argument is flawed in that it assumes that the last day to claim deductions is the last day of the taxpayer's fiscal year. Correctly stated, the last day to claim deductions would be no sooner than the date when the taxpayer's return is to be filed. Moreover, under § 37, the limitation period runs from the date taxes are "assessed or deemed to be assessed." Here, as stated above, tax was assessed when the taxpayer filed its Form 355FC, paid the tax due, and the commissioner took no further action. Therefore, we conclude that the taxpayer timely filed its application within two years from the date tax was assessed.

The commissioner's argument that the decision we reach engenders absurd results is largely addressed in *Electronics Corp. of Am.* v. *Commissioner of Revenue, supra* at 677. However, one contention merits further comment. The commissioner claims that, under today's decision, "the same federal change, no matter how long after the tax year in question, would allow the Commissioner to assess additional taxes he might have missed the first time around even though those changes might be unrelated to the federal change . . . ." While the precise situation is not before us, we note that any such result would appear to be squarely prohibited by the language of G. L. c. 62C, § 30 (1986 ed.). Under that provision, "[i]f . . . it shall appear that any tax . . . has not been fully assessed, the commissioner shall, notwithstanding the three-year limitation in section twenty-six, assess an additional tax . . . within one year of the receipt of [the report of change in Federal taxable income] or within two years of the receipt by the commissioner of [relevant] information from the federal government . . . and shall be limited to changes in such person's tax liability . . . arising out of or related to the items which resulted in the change in federal taxable income . . . ." That section limits the commissioner both as to the time within which additional assessments may be made, and the scope of the issues to which such assessments may relate.

The commissioner's other arguments are adequately addressed in *Electronics Corp. of Am.* v. *Commissioner of Revenue, supra* at 674-677.

3. *Disposition.* The case is remanded to the Appellate Tax Board for further proceedings consistent with this opinion.

*So ordered.*