596　　　　　　　　　　　　　　　42 Mass. App. Ct. 596

H-C Health Services, Inc. *v.* Board of Assessors of South Hadley.

H-C HEALTH SERVICES, INC., & another[1] *vs.* BOARD OF
ASSESSORS OF SOUTH HADLEY.

No. 96-P-856.

Suffolk. February 5, 1997. - May 12, 1997.

Present: ARMSTRONG, GILLERMAN, & LENK, JJ.

*Taxation,* Personal property tax: exemption; Real estate tax: charity, exemption. *Charity. Corporation,* Charitable corporation.

The Appellate Tax Board correctly ruled that two business corporations (nursing homes) organized under G. L. c. 156B need not be organized under G. L. c. 180 to qualify for the charitable exemption under G. L. c. 59, § 5, Third, and the board correctly determined, referring to the expression of purpose in the corporations' charters and their actual operations, that the nursing homes did so qualify for the charitable exemption. [598-599]

APPEAL from a decision of the Appellate Tax Board.
*Alan Seewald* for the defendant.
*David R. Baron* for the plaintiffs.

GILLERMAN, J. The board of assessors of South Hadley (town) appeals from the decision of the Appellate Tax Board (ATB) granting abatements of taxes for the years 1992 and 1993 on real estate and personal property assessed to H-C Health Services, Inc., and Falls Nursing Home, Inc. (together referred to as the appellees).

The appellees are each organized as business corporations under the provisions of G. L. c. 156B. The ATB ruled (I) that to qualify for the charitable exemption under G. L. c. 59, § 5, Third,[2] a corporation need not be organized under G. L. c. 180 and (ii) that "for purposes of qualification for exemp-

____

[1]Falls Nursing Home, Inc.

[2]The third clause, as amended through St. 1969, c. 129, exempts personal property "of a charitable organization . . . incorporated in the commonwealth," and it exempts "real estate owned by or held in trust for a

tion under G. L. c. 59, § 5, [Third], a functional test is applied, and reference is made to the language of its charter or articles of organization, its by-laws, the objects which it serves, and its declared purposes and the work performed by it." We take these rulings to mean that the operative corporate documents and the actual operations of the appellees were determined by the ATB to have qualified as a "charitable organization" for purposes of c. 59, § 5, Third.[3]

The town challenges these rulings, arguing that the appellees are not entitled to the charitable exemption from local property taxes because of their incorporation under G. L. c. 156B which, inter alia, permits the distribution of assets to stockholders. The issues presented do not appear to have been the subject of any previously reported appellate decision.

We summarize the facts, none of which is challenged by the town in its brief.

H-C Health Services, Inc., owns and operates a 120-bed licensed nursing home in South Hadley. The population at the nursing home is predominantly Medicaid patients. All the issued and outstanding shares of the capital stock are owned by a charitable corporation organized and existing under the provisions of G. L. c. 180. The primary purpose of the corporation, as stated in its "Restated Articles of Organization," is to operate, and provide services to, residential or day-care facilities for elderly or infirm persons. Its articles also provide that the corporation intends that it be entitled to an exemption from Federal income taxes by qualifying as a charitable corporation under the provisions of § 501(c)(3) of

---

charitable organization and occupied by it or its officers for the purposes for which it is organized . . . provided, however, that: —

"(a) If any of the income or profits of the business of the charitable organization is divided among the stockholders, the trustees or the members, or is used or appropriated for other than literary, benevolent, charitable, scientific or temperance purposes or if upon dissolution of such organization a distribution of the profits, income or assets may be made to any stockholder, trustee or member, its property shall not be exempt . . . ."

[3]The town did not request the ATB to make findings of fact, and it made none. Only "pure questions of law" are preserved on appeal. *Supermarkets Gen. Corp.* v. *Commissioner of Rev.*, 402 Mass. 679, 681-682 (1988). The town is also foreclosed from arguing that the evidence did not warrant findings that are implicit in the ATB's decision. See *Beardsley* v. *Assessors of Foxborough*, 369 Mass. 855, 856 n.3 (1976). This leaves the material facts presented by the appellees, and necessary to the decision of the ATB, the governing facts for this appeal.

598 42 Mass. App. Ct. 596

H-C Health Services, Inc. *v.* Board of Assessors of South Hadley.

the Internal Revenue Code of 1954, as amended. Thus, the articles also provide that no part of its assets or earnings may enure to the private benefit of any individual or legal entity, and that upon liquidation or dissolution its assets shall be distributed only to a § 501(c)(3) organization. The corporation has been granted § 501(c)(3) status by the Internal Revenue Service, and it has received a sales tax exemption certificate from the Commonwealth's Department of Revenue.

The corporate characteristics of Falls Nursing Home, Inc., are identical to those of H-C Health Services, Inc. Prior to its present inactive status, it also operated a nursing home in South Hadley predominantly for medicare and medicaid patients.

*Discussion.* The text of the third clause of § 5 does not support the town's appeal. The exemption from the local tax on personal property is available to a "charitable organization" if it is "incorporated in the commonwealth." The exemption for the local tax on real estate is available where the real estate is either "owned by or held in trust for a charitable organization." Nowhere does the statute provide that, in order to qualify as a charitable organization, the taxpayer must be incorporated under c. 180. Further, the ATB found, as we have said, that the corporate documents, and the actual operations of the appellees, were such as to qualify the appellees as "charitable organizations."

There is no reason to import the provisions of c. 180 to identify the circumstances under which the exemption provided in G. L. c. 59, § 5, Third, is not available. Subparagraph (a), quoted in note 2, *supra*, performs that task: any distribution of assets for private benefit is a disqualifying event. No such disqualification is present in this case; see note 5, *infra*. Moreover, "an entity may be treated as charitable for one purpose and not for another." *Attorney Gen.* v. *Weymouth Agric. & Indus. Soc.*, 400 Mass. 475, 477 n.3 (1987) (citing cases holding that Boston Symphony Orchestra is subject to local property tax but is entitled to the charitable immunity). The issue is solely whether the appellees are "charitable organizations" for the purpose of the exemption from local property taxes.

The ATB's "functional test" for the determination of the availability of the third clause's exemption has been approved by the Supreme Judicial Court. In *Assessors of Boston* v. *Vin-*

*cent Club,* 351 Mass. 10, 12 (1966), the court held that whether a taxpayer is a charitable organization qualified under the third clause depends upon "the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration . . . [o]r, as otherwise expressed, upon the declared purposes and the actual work performed." Nowhere is there any intimation in this passage that what matters is the chapter of the General Laws under which the taxpayer was organized.[4] See also *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge,* 384 Mass. 536, 541 (1981) ("Exemption is extended to the real property of a corporation with charitable purposes, provided it is occupied by the corporation for such purposes"). Moreover, the fact that the appellees have been granted exemption from Federal taxation by reason of its status as a charitable corporation is relevant to this inquiry. This is because "[t]he requirements for exemption under I.R.C. § 501(c)(3) are virtually identical to those under G. L. c. 59, § 5, Third." *Id.* at 538 n.3.

What does matter, as the court has repeatedly emphasized, is how the organization describes itself, and what in fact it does. The language of the charter of the appellees — dedication to the care of the elderly and the infirm, with no financial benefit permissibly flowing to private investors — is the language of a charitable organization, and the operation of a nursing home for the elderly and the infirm is the work of a charitable corporation. It is substance, not form, that counts, see *Brown, Rudnick, Freed & Gesmer* v. *Assessors of Boston,* 389 Mass. 298, 302-303 (1983), but it is form only that the town would find dispositive of the issue before us.[5]

---

[4]The fact that the Vincent Club was incorporated under c. 180 does not defeat the relevance of the decision. The fact of incorporation under c. 180 is recited among the historical facts set in the opinion. Thereafter it is not mentioned in the context of the issue of the claimed exemption under G. L. c. 59, § 5, Third.

[5]The town also argues that each of the appellees has a stockholder, and the assets of each of the appellees may be distributed to the stockholder, thereby disqualifying the exemption by reason of subparagraph (a) of the third clause. See note 2, *supra.* Where, as here, the stockholder is organized under c. 180, and the restated articles of the appellees expressly prohibit any distribution of assets for private benefit, there is no loss of the exemption. Of course, as the town points out, the appellees may change their articles of organization to permit the distribution of their assets to private

For the foregoing reasons, we find no error in the decision of the ATB.

*Decision of the Appellate Tax Board affirmed.*

individuals for their private benefit. That may be so, and, if and when that occurs, the appellees may lose their exemption. As matters now stand, such a distribution is not permissible.